**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID: 321359
450 7th Avenue, 30th Floor
New York, NY 10123
Direct: (267) 857-0849
ian@dereksmithlaw.com
*Attorneys for Plaintiff, Nicole Alexander*

### UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE ALEXANDER,<br><br>                Plaintiff,<br><br>   v.<br><br>IT TAKES A VILLAGE TO FEED ONE CHILD,<br><br>                Defendant. | Civil Action No.<br><br>**JURY TRIAL DEMANDED**<br><br>**COMPLAINT** |

Plaintiff, Nicole Alexander (hereinafter referred to as "Plaintiff"), by and through her attorneys, Derek Smith Law Group, PLLC, hereby complains of Defendant It Takes A Village To Feed One Child, (hereinafter referred to as "ITAVTFOC"), upon information and belief, as follows:

### NATURE OF THE ACTION

1. This is an action for damages and equitable relief arising out of Defendant's unlawful discrimination, sexual harassment, hostile work environment, and retaliation against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

2. During her employment, Plaintiff was subjected to repeated sexualized comments, unwelcome physical conduct, and sexually explicit communications by Mark

1

Wainwright, the organization's Founder and Executive Director. Among other things, Wainwright sent Plaintiff a link to a pornographic website and made graphic comments about her body in the presence of other employees.

3. When Plaintiff rejected Wainwright's advances and attempted to establish boundaries, Defendant retaliated against her by increasing her workload, undermining her work environment, and ultimately placing her on unpaid administrative leave.

4. The harassment and retaliation became so severe and intolerable that Plaintiff was forced to leave her employment, constituting a constructive discharge.

5. Defendant's conduct caused Plaintiff severe emotional distress, humiliation, and economic damages.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f).

7. Venue is proper in the Eastern District of Pennsylvania because the unlawful employment practices occurred within this District.

## PARTIES

8. Plaintiff Nicole Alexander is an adult individual residing in Philadelphia County, Pennsylvania.

9. Defendant It Takes A Village To Feed One Child ("ITAVTFOC") is a nonprofit organization with its principal place of business at 2000 West Valley Forge Circle, Suite 140, King of Prussia, Pennsylvania.

10. At all relevant times, ITAVTFOC employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and was an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b).

11. At all relevant times, Mark Wainwright served as the Founder and Executive Director of ITAVTFOC and exercised supervisory authority over Plaintiff.

## ADMINISTRATIVE EXHAUSTION

12. On or about June 4, 2025, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 530-2025-06998.

13. The charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

14. On December 17, 2025, the EEOC issued Plaintiff a Notice of Right to Sue.

15. Plaintiff has timely commenced this action within ninety days of receiving the Right-to-Sue notice.

## FACTUAL ALLEGATIONS

A.  *Plaintiff's Employment*

16. Plaintiff began working for Defendant in approximately June 2023 as a Program Coordinator.

17. Plaintiff reported directly to Wainwright.

18. From the outset of Plaintiff's employment, Wainwright exercised substantial control over the workplace and Plaintiff's job duties.

19. At all relevant times, ITAVTFOC lacked a human resources department and had no independent mechanism for employees to report harassment or discrimination other than to Wainwright himself.

20. ITAVTFOC did not have a functioning human resources department at any point during Plaintiff's employment. Upon information and belief, Wainwright attempted to engage an

3

outsourced HR service in approximately 2024, but no independent HR function was operational prior to Plaintiff's separation from employment in February 2025.

21. Wainwright managed the workplace primarily through informal group text messages sent to employees' personal phones, frequently at night and outside regular business hours.

B.  *Sexual Harassment by Wainwright*

22. Shortly after Plaintiff began working for Defendant, Wainwright disclosed to Plaintiff that he was engaged in a sexual relationship with another employee, Necol Rodgers.

23. During this conversation, Wainwright made graphic and sexually explicit remarks about Rodgers, including stating that if he wanted to "throw her on the desk and have sex with her any way he wanted," he could.

24. Wainwright's comments caused Plaintiff to feel uncomfortable and degraded.

25. Wainwright frequently spoke to Plaintiff about personal and sexual matters involving other employees.

26. Wainwright routinely discussed his sexual pursuits with Plaintiff, including boasting about extramarital affairs and making sexually explicit comments about the physical appearance of women associated with the organization's programs.

27. Plaintiff attempted to establish boundaries and redirect conversations to work-related matters. Wainwright persisted.

28. Wainwright began directing unwelcome attention toward Plaintiff.

29. On multiple occasions, Wainwright entered Plaintiff's office uninvited and attempted to hug her or kiss her on the head.

30. Plaintiff did not welcome these advances.

4

31. Plaintiff attempted to discourage the attention by avoiding interaction and closing her office door.

32. On one occasion, Wainwright commented on Plaintiff's body and stated: "Wow, you look hot. It looks like your butt is getting bigger. Your thighs are getting better. You're going to make me divorce my wife, fire you, and then marry you."

33. These comments were made in the presence of another employee.

34. On or about November 2, 2023, at approximately 9:36 p.m., Wainwright sent Plaintiff a text message containing a link to a pornographic website (xhamster.com) and suggested that a woman depicted on the site resembled someone involved in Plaintiff's personal life.

35. On or about August 1, 2024, Wainwright sent Plaintiff a text message at approximately 6:00 p.m. stating: "I wasn't just messing with you today. You are a beautiful woman, I love seeing you like that." Wainwright followed this by commenting on Plaintiff's hairstyle in sexualized terms.

36. These communications were humiliating and deeply distressing to Plaintiff.

37. The workplace environment became increasingly hostile.

38. On October 13, 2023, Plaintiff suffered a panic attack while driving to work and was hospitalized.

39. Wainwright appeared at the hospital and entered Plaintiff's treatment room.

40. Plaintiff was frightened and uncomfortable with his presence.

41. Wainwright falsely told another employee that he had engaged in sexual relations with Plaintiff.

42. Plaintiff was deeply humiliated upon learning of this statement, which was categorically untrue.

43. In or about November 2024, another employee sent a message in the workplace group chat stating that she had addressed inappropriate behavior by Wainwright directly with him, including threats of termination and hostile and discriminatory comments directed at women in the workplace. That employee resigned the same day.

44. Upon information and belief, another employee, Necol Rodgers, separately filed a Charge of Discrimination with the EEOC arising out of Wainwright's conduct.

C. *Retaliation*

45. Plaintiff repeatedly rejected Wainwright's advances and attempted to maintain a professional relationship.

46. After Plaintiff rejected Wainwright's attention, her working conditions worsened.

47. Plaintiff was given an increased workload and more difficult assignments.

48. Wainwright began limiting direct communication with Plaintiff and routing interactions through other individuals.

49. Plaintiff was subjected to hostile group messages in which Wainwright threatened termination of employees who questioned management. In one such message, Wainwright stated: "Someone is getting fired TODAY, that's a promise!!!!"

50. In or around September 2024, Plaintiff informed Wainwright that she intended to leave the organization.

51. Wainwright responded with words to the effect that if she left, he could "send a hitman wherever [she] go[es]."

52. Plaintiff perceived this statement as a threat and felt coerced to remain in her position.

D. *Unpaid Leave and Constructive Discharge*

53. In early February 2025, Plaintiff contracted pneumonia and took sick days. Plaintiff provided notice via text message.

54. On or about February 6, 2025, Defendant informed Plaintiff that the first week of her absence would be paid, but that any additional time would be unpaid.

55. Defendant demanded a doctor's note and subsequently placed Plaintiff on unpaid administrative leave, effective immediately, with a purported return date of April 18, 2025.

56. The stated justification for the leave was Plaintiff's alleged "lack of communication" during a period when she was incapacitated with pneumonia and had already notified Defendant of her illness.

57. While on leave, Defendant demanded the return of a company vehicle and threatened to report it stolen if Plaintiff failed to comply.

58. Defendant encouraged Plaintiff to voluntarily resign. Upon information and belief, Defendant did so to prevent Plaintiff from receiving unemployment compensation.

59. The cumulative effect of the sexual harassment, threats, retaliatory treatment, unpaid administrative leave, vehicle demands, and pressure to resign rendered Plaintiff's working conditions so intolerable that a reasonable employee would have felt compelled to resign.

60. Plaintiff did not return to ITAVTFOC on April 18, 2025.

61. Defendant's conduct constituted a constructive discharge.

62. Defendant's conduct caused Plaintiff severe emotional distress, humiliation, and financial harm.

## COUNT I

### Sex Discrimination

*(Title VII – Against ITAVTFOC)*

63. Plaintiff incorporates the preceding paragraphs.

64. Plaintiff is female.

65. Defendant subjected Plaintiff to adverse employment actions because of her sex, including increased workload, hostile treatment, unpaid administrative leave, and constructive discharge.

66. Defendant's conduct was motivated by Plaintiff's sex.

67. Defendant's conduct constitutes unlawful sex discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a).

68. As a direct and proximate result, Plaintiff suffered damages.

## COUNT II

### Sexual Harassment / Hostile Work Environment

*(Title VII – Against ITAVTFOC)*

69. Plaintiff incorporates the preceding paragraphs.

70. Plaintiff was subjected to unwelcome sexual conduct by Wainwright, including sexual comments about her body, unwanted physical contact, sexually explicit text messages containing a link to a pornographic website, and sexualized after-hours communications.

71. The conduct was severe and pervasive.

72. The harassment was based on Plaintiff's sex.

73. The harassment altered the terms and conditions of Plaintiff's employment and created an abusive working environment.

74. ITAVTFOC knew or should have known about the harassment and failed to take appropriate corrective action. At all relevant times, ITAVTFOC lacked an independent human resources department or any effective mechanism for employees to report harassment, and employees were expected to report complaints directly to Wainwright himself — the individual responsible for the harassment.

75. Defendant's conduct constitutes unlawful sexual harassment in violation of Title VII, 42 U.S.C. § 2000e-2(a).

76. As a direct and proximate result, Plaintiff suffered damages.

## COUNT III

### Retaliation

*(Title VII – Against ITAVTFOC)*

77. Plaintiff incorporates the preceding paragraphs.

78. Plaintiff engaged in protected activity by objecting to, opposing, and rejecting Wainwright's sexual conduct and attempting to establish professional boundaries.

79. After Plaintiff rejected Wainwright's advances, Defendant subjected her to adverse actions including:

   a. increased workload and more difficult assignments

   b. workplace hostility and threatening group messages

   c. unpaid administrative leave following a period of illness

   d. demands for return of company property accompanied by threats

   e. pressure to resign

80. These actions were taken because of Plaintiff's protected activity.

81. Defendant's conduct constitutes unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a).

82. As a direct and proximate result, Plaintiff suffered damages.

## RESERVATION OF STATE LAW CLAIMS

83. Plaintiff's Charge of Discrimination was dual-filed with the Pennsylvania Human Relations Commission ("PHRC") on or about June 4, 2025.

84. Under the Pennsylvania Human Relations Act, 43 P.S. § 962(c)(1), Plaintiff may commence an action in court if the PHRC has not entered into a conciliation agreement within one year of the filing of the complaint.

85. Plaintiff reserves the right to amend this Complaint to add claims under the PHRA, including claims for individual liability against Wainwright, upon the expiration of the one-year period.

## DAMAGES

86. As a result of Defendant's unlawful conduct, Plaintiff suffered:
    a. loss of income and employment benefits
    b. emotional distress, anxiety, and other psychological injuries
    c. humiliation and embarrassment
    d. loss of enjoyment of life

87. Defendant acted intentionally, maliciously, and with reckless indifference to Plaintiff's rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and award:

10

    a. Compensatory damages;

    b. Back pay and front pay;

    c. Emotional distress damages;

    d. Punitive damages;

    e. Attorneys' fees and costs;

    f. Pre- and post-judgment interest;

    g. Any other relief the Court deems just and appropriate.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

DEREK SMITH LAW GROUP, PLLC

*/s/ Ian M. Bryson, Esquire*
IAN M. BRYSON, ESQUIRE
450 7th Avenue, 30th Floor
New York, NY 10123
Direct: (267) 857-0849

Dated: March 11, 2026
New York, NY

ian@dereksmithlaw.com
*Attorneys for Plaintiff*